UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:22-cv-00247-KKM-SPF

BRITTANY S. HADDOX,

   Plaintiff,

v.

IQ DATA INTERNATIONAL, INC.,

   Defendant.
_____/

**DEFENDANT I.Q. DATA INTERNATIONAL'S
MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11**

DEFENDANT, I.Q. DATA INTERNATIONAL INC. ("IQ DATA"), by and through undersigned counsel, hereby files this Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, and requests monetary sanctions against both the PLAINTIFF, BRITTANY S. HADDOX, and the law firm representing PLAINTIFF in this case. In support of this Motion, IQ DATA states as follows:

**I.   Allegations of the First Amended Complaint**

The First Amended Complaint[1] seeks to recover under the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collections Practices Act ("FCCPA"). **Complaint ¶1.**

PLAINTIFF resided at an apartment complex known as Oak Run Apartments. **Id**. at **¶11.** PLAINTIFF accrued an outstanding balance and debt of $1,715.85. **Id**. at **¶12.** IQ DATA, a debt collector, acquired the rights to collect the debt. **Id**. at **¶13.** In approximately January 2022,

---

[1] The Original Complaint was sua sponte dismissed by the Court (doc. entry 12) on approximately March 11, 2022 for being an impermissible shotgun Complaint.

PLAINTIFF contacted IQ DATA to attempt to settle and resolve the outstanding debt, including an attempt to remove the negative trade line from PLAINTIFF'S credit report. **Id**. **at ¶15.**

PLAINTIFF spoke with IQ DATA representative Jesse Smith. **Id**. **at ¶16.** PLAINTIFF offered to settle the debt for about half of the outstanding balance, or about $850. **Id**. **at ¶18.** PLAINTIFF'S offer was rejected by IQ DATA. **Id**. **at ¶19.** PLAINTIFF claimed that she could not afford to pay the entire debt. **Id**. **at ¶20.**

Allegedly, IQ DATA then began to: "harass" PLAINTIFF and requested that she obtain a "predatory high interest rate loan," **Id**. **at ¶24;** "belittle" PLAINTIFF, **Id**. **at ¶26;** and, "used unconscionable language" to "shame and take advantage of PLAINTIFF," **Id**. **at ¶27.**

Additionally, pursuant to Count I of the First Amended Complaint, IQ DATA allegedly violated Section 1692(d) of the FDCPA by "using obscene or profane language" or abusive language. **Id**. **at ¶¶39-40.**

Next, pursuant to Count II of the First Amended Complaint, IQ DATA allegedly violated Section 1692f of the FDCPA by "unfairly and unconscionably" attempting to collect a debt by "harassing" PLAINTIFF'S financial status as a single mother, including using "unconscionable" language. **Id**. **at ¶¶41-42.**

Finally, pursuant to Count III of the First Amended Complaint, IQ DATA allegedly violated the FCCPA by willfully using "profane, obscene, vulgar, offensive or willfully abusive language" in communicating with PLAINTIFF. **Id**. **at ¶¶48-49.**

## II.     The Telephone Call between PLAINTIFF and IQ DATA[2]

On March 25, 2022, IQ DATA sent PLAINTIFF'S attorney the recorded telephone call identified in the First Amended Complaint. **See** **Exhibit 1.** After receiving the recorded telephone call and presumably listening to it, PLAINTIFF'S attorney nevertheless continued to prosecute this case.

However, as evidenced by the recorded telephone call, there was no language that could possibly qualify as harassing, belittling, unconscionable, abusive, obscene, profane, vulgar, or offensive.  Furthermore, IQ DATA simply suggested that PLAINTIFF may want to consider obtaining a loan to pay the debt, but PLAINTIFF indicated that such was not an option because she had already taken out a loan to pay IQ DATA the $850 offer.  PLAINTIFF also indicated that she was a single mother.  IQ DATA noted that there were plenty of single mothers paying their bills.

Not to mention, **PLAINTIFF lied on the telephone call with Jesse Smith**.  That is, PLAINTIFF indicated that at that time she could not afford to pay more than $850.  But, when PLAINTIFF spoke to Jesse Smith's supervisor, she settled the debt for approximately $1,370.  Accordingly, apparently PLAINTIFF could in fact afford to pay more than $850 at that time even though she told Jesse Smith the precise opposite.

---

[2] As alleged, PLAINTIFF complained about her conversation with Jesse Smith of IQ DATA. The conversation with Jesse Smith lasted about 7:15, including 1 to 2 minutes of PLAINTIFF being placed on hold.  The entire telephone call was about 25 minutes, with PLAINTIFF speaking to an IQ DATA supervisor for the vast majority of the telephone call, after speaking to Jesse Smith.

### III. Argument and Analysis of Law

A. **Rule 11**

When filing a complaint, the attorney certifies to the Court that, among other things, the Complaint:

(1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) **the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and,

\* \* \*

Fed. R. Civ. P. 11(b)(1), (2), and (3).

B. **The Alleged Violation of the FDCPA and FCCPA**

As noted above, PLAINTIFF alleges violations of FDCPA Sections 1692d and 1692f, and violations of the FCCPA. Most of the First Amended Complaint is devoted to claiming that IQ DATA used harassing, belittling, unconscionable, abusive, obscene, profane, vulgar, or offensive language. In fact, such allegations are specifically part of every Count of the Complaint. However, there was no such language used by IQ DATA. Accordingly, these allegations of the Complaint are a blatant and direct lie; thus, such allegations have no evidentiary support in violation of Rule 11(b).

Next, suggesting or requesting as to whether PLAINTIFF could obtain a loan to pay the outstanding debt is in no way a violation of the FDCPA or FCCPA. There is simply no case law that supports such a position; nor, does the statutory language of the FDCPA or FCCPA suggest that such is improper. In fact, the case law holds that the debt collector can contact the debtor to,

among other things:

> inform or remind the debtor of the debt, to determine [the debtor's] reasons for nonpayment, to negotiate differences, or to persuade the debtor to pay without litigation.

See e.g. McCaskill v. Navient Solutions Inc., 178 F.Supp.3d 1281, 1296 (M.D. Fla. April 6, 2016) (citation omitted).  Accordingly, such allegations are also a violation of Rule 11(b).

Finally, IQ DATA'S "single mother" comments (along with the entire conversation) in no way qualifies as unconscionable language or improper communications under the FDCPA or FCCPA.  Indeed, as noted by the Eleventh Circuit, "unfair" or "unconscionable" language can be classified as follows:

> Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by "unfair" or "unconscionable." See Beler, 480 F.3d at 474 (With respect to Section 1692f, "[t]he phrase 'unfair or unconscionable' is as vague as they come.") **The plain meaning of "unfair" is "marked by injustice, partiality, or deception."** Significantly, in Jeter, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... **if it has the tendency or capacity to deceive**." Jeter, 760 F.2d at 1172. The term "unconscionable" means **"having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness."** BLACK'S LAW DICTIONARY 1526 (7th ed.1999).

LeBlanc v. Unifund CCR Partners ZB, 601 F.3d 1185, 1200 (11th Cir. 2010).

Accordingly, regarding PLAINTIFF'S entire conversation with Jesse Smith, including the "single mother" comments, the "obtaining a loan" discussion, and all other comments, there is simply nothing that qualifies as a "tendency or capacity to deceive," or "having no conscience, unscrupulous, showing no regard for conscience, or affronting the sense of justice, decency, or reasonableness."[3]  Consequently, PLAINTIFF'S First Amended Complaint is a violation of Rule

---

[3] The Court has the authority to listen to the telephone call and decide for itself whether as a matter of law there was no violation of the FDCPA or FCCPA:  "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for a jury.  Nevertheless, Congress indicated its

5

11(b).

### IV. Conclusion

In summary, IQ DATA asserts that as a matter of law, the allegations of the First Amended Complaint, which are premised entirely on a telephone call between PLAINTIFF and Jesse Smith of IQ DATA, have **no evidentiary or factual basis whatsoever** and in fact are a blatant lie.  The conversation between PLAINTIFF and IQ DATA was not as a matter of law a violation of the FDCPA and FCCPA.  PLAINTIFF'S attorney was provided the recorded telephone call on March 25, 2022, shortly after this case was filed; but, PLAINTIFF'S attorney continued to prosecute this case.  Accordingly, IQ DATA requests that the Court order PLAINTIFF and PLAINTIFF'S attorney/law firm to be jointly and severally liable under Rule 11 for all of IQ DATA'S attorney's fees and costs for defending this case.

WHEREFORE, IQ DATA requests an award of all its attorney's fees and costs incurred in defending this action, and that PLAINTIFF and PLAINTIFF'S attorney/law firm jointly and severally be liable for such attorney's fees and costs.

---

desire for the courts to structure the confines of Section 1692d." Jeter v. Credit Bureau Inc., 760 F.2d 1168, 1179 (11th Cir. 1985) (upholding granting of summary judgment in favor of Defendant).

## RULE 11 CERTIFICATION

Pursuant to Rule 11(c)(2), IQ DATA asserts that this Motion will be served upon PLAINTIFF'S attorney under Rule 5, but it will not be filed with the Court until the passage of at least 21 days after service if the First Amended Complaint is not dismissed with prejudice.

## CERTIFICATE OF SERVICE

I hereby certify that on **April 12, 2022**, I sent the foregoing document to all counsel of record identified on the attached Service List via E-Mail.

    Respectfully submitted,

    */s/ Douglas A. Kahle*
    Douglas A. Kahle, Esq.
    Florida Bar No.: 0141194
    E-Mail: dkahle@schwedpa.com
    SCHWED KAHLE & KRESS, P.A.
    11410 North Jog Road, Suite 100
    Palm Beach Gardens, FL 33418
    Telephone: (561) 694-0070
    Facsimile: (561) 694-0057
    *Attorneys for IQ DATA*

## SERVICE LIST

ALEXANDER J. TAYLOR, ESQ.
Sulaiman Law Group, Ltd
2500 S. Highland Ave, Ste. 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on **June 1, 2022**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

*/s/ Douglas A. Kahle*
Douglas A. Kahle, Esq.
Florida Bar No.: 0141194
E-Mail: dkahle@schwedpa.com
SCHWED KAHLE & KRESS, P.A.
11410 North Jog Road, Suite 100
Palm Beach Gardens, FL 33418
Telephone: (561) 694-0070
Facsimile: (561) 694-0057
*Attorneys for IQ DATA INTERNATIONAL*

## SERVICE LIST

ALEXANDER J. TAYLOR, ESQ.
Sulaiman Law Group, Ltd
2500 S. Highland Ave, Ste. 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com

*Counsel for Plaintiff*

Via CM/ECF